IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ANNA BOYCE and NICHOLAS J.
SALAMONE,

                Plaintiffs,

     v.

JAMEY EGGERS, et al.,

                Defendants.

Civil Action
No. 05-2431 (JBS)

**OPINION**

**APPEARANCES:**

F. Michael Daily, Jr., Esq.
Sentry Office Plaza
216 Haddon Avenue
Suite 100
Westmont, NJ 08108
    Attorney for Plaintiffs

Michael O. Kassak, Esq.
WHITE & WILLIAMS, ESQS.
457 Haddonfield Road
Suite 400
Cherry Hill, NJ 08002-2220
    Attorney for Defendants Brian Conte, Brian Beppel and
    Borough of Mount Ephraim

**Simandle, District Judge:**

**I.   INTRODUCTION**

This matter is before the Court on the motion for summary

judgment by Defendants Brian Conte, Brian Beppel and Borough of

Mount Ephraim ("the moving defendants" or "the Mount Ephraim

Defendants"), pursuant to Fed. R. Civ. P. 56.  For the reasons

explained below, the Court shall grant the motion.

**II.   BACKGROUND**

This case arises out of Plaintiffs' distribution of flyers to residents of Mount Ephraim and a criminal complaint filed against them by Jamey Eggers, a defendant who has not appeared in this action.  Plaintiffs allege that the moving defendants encouraged Eggers to file a complaint against them in retaliation for Plaintiffs' political activities, in violation of the First Amendment.  The Mount Ephraim defendants filed this motion for summary judgment, arguing that they have no culpability for the complaint a private citizen filed.

**II.   SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

In deciding whether there is a disputed issue of material fact, a court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that

2

party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).  The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party would have the burden of persuasion at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Country Floors v. P'ship of Gepner and Ford, 930 F.2d 1056, 1061-63 (3d Cir. 1991).  "The burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

"[T]he nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered."  U.S. v. Premises Known as 717 S.

3

Woodward St., Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993)

(quoting Fed. R. Civ. P. 56(e))(citations omitted).

> Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery
> and upon motion, against a party who fails to
> make a showing sufficient to establish the
> existence  of an element essential to that
> party's case, and on which that party will
> bear the burden of proof at trial.  In such a
> situation, there can be "no genuine issue as
> to any material fact," since a complete
> failure of proof concerning an essential
> element of the nonmoving party's case
> necessarily renders all other facts
> immaterial.

Celotex, 477 U.S. at 323 (citation omitted).

## III. QUALIFIED IMMUNITY

Defendants' motion for summary judgment includes a claim

that the individual officers (Beppel and Conte) are entitled to

qualified immunity.

> "Government officials performing
> discretionary functions generally are
> shielded from liability for civil damages
> insofar as their conduct does not violate
> clearly established statutory or
> constitutional rights of which a reasonable
> person would have known." Harlow v.
> Fitzgerald, 457 U.S. 800, 818 (1982). The
> qualified immunity standard "gives ample room
> for mistaken judgments by protecting all but
> the plainly incompetent or those who
> knowingly violate the law." Hunter v. Bryant,
> 502 U.S. 224, 229 (1991) (internal quotations
> omitted).  In determining qualified immunity,
> we first ask whether "the facts alleged,
> viewed in the light most favorable to the
> party asserting the injury, show that the
> officer's conduct violated a constitutional
> right." Curley v. Klem, 298 F.3d 271, 277 (3d

4

> Cir. 2002). If so, we then ask whether it
> "would be clear to a reasonable officer that
> his conduct was unlawful in the situation he
> confronted." Id. (quoting Saucier v. Katz,
> 533 U.S. 194, 202 (2001)).

Gilles v. Davis, 427 F.3d 197, 203-04 (3d Cir. 2005).  The first

step of the qualified immunity analysis, therefore, is to

determine whether the conduct alleged, when the facts are viewed

in the light most favorable to the plaintiff, states a claim for

a violation of a constitutional right.  Accordingly, the Court

shall integrate its qualified immunity analysis into its

discussion of each of Plaintiff's claims on which Defendants seek

summary judgment, below.

**IV.  FACTS**

       The facts set forth here are admitted facts and other facts

that will be viewed in the light most favorable to the non-moving

parties, the plaintiffs.  The plaintiffs are Anna Boyce ("Boyce")

and Nicholas Salamone, Jr. ("Salamone"), residents of Mount

Ephraim who had been engaged in distributing information critical

of the Mount Ephraim administration shortly before an election.

The moving defendants are partolman Brian Conte, Police Captain

Brian Beppel and the Borough of Mount Ephraim.  At the time of

these incidents, Beppel was acting Captain and the head of the

police department.  (Beppel Dep. at 26.)

       On the evening of Friday, May 9, 2003, Salamone was driving

Boyce around residential neighborhoods so they could deliver

flyers to residents prior to the Tuesday, May 13 municipal
election.  Boyce delivered two flyers to the home of Jamey
Eggers, as well as to several other residents on her block.  Each
flyer was printed on the letterhead of the "Mount Ephraim Civic
Association" and addressed matters of public concern.  The first
alleged that hazardous waste was present on a public softball
field and the second, "Our Current Issues with the Borough of
Mount Ephraim Mayor & Commissioners," included a lengthy list of
complaints against the Borough's administrators.  At the time,
Jamey Eggers was the Borough Clerk of Mount Ephraim and her
father, William Eggers, was a Commissioner of the Borough.

     Earlier that evening Defendant Conte had observed Plaintiffs
driving through a municipal park after hours.  He then followed
them in his cruiser from street to street.  At about 11:00 p.m.
Conte observed Anna Boyce approach Jamey Eggers's home and the
truck Boyce had been in drive off.  After Boyce left flyers under
Eggers's mailbox, Conte approached the home and informed the
residents that Boyce had delivered something to them.  He did not
approach the residents of any of the other homes to which Boyce
had delivered her flyers.  Kelly Eggers, Jamey's sister,
retrieved the flyers, looked at them, was not concerned, and
handed them to Conte.

     The Monday after the incident Eggers went to the police
station.  Beppel testified that he spoke with her and explained

how she could file criminal charges.  Beppel also claims that he told her the police department did not think the conduct of Plaintiffs was sufficient for the police to charge them with any crime.  Plaintiffs point out that no one in the police department discouraged Eggers from filing the criminal complaint on her own. Eggers then wrote out a statement in Beppel's presence, which he signed to indicate he saw her prepare it.

Eggers proceeded to the office of municipal court clerk Joan Dallas, who accepted the criminal complaint and issued process. Later that day, Beppel served the criminal complaints and summonses on Plaintiffs.  There was no arrest.  Those charges were eventually dismissed by Mount Ephraim Municipal Court. Plaintiffs then filed this one-count Complaint, alleging generally that Defendants violated their First Amendment rights to free speech.  The Complaint does not articulate a more particular theory.

Boyce said at her deposition that she was unsure whether the receipt of the summons and the criminal charges actually caused her to refrain from any political activity:

> Q:  Did the receipt of these complaints cause you not to go out and distribute flyers that night?
>
> A:  No, I don't think so. No - oh, wait a minute.  I think I was - I think I was a little scared.  Was it that night?  I thought maybe I was doing something wrong.  Can I - did I - I think I gave some that night.  I don't remember, honey, really, you know.

(Boyce Dep. at 67.)[1]  On the other hand, Salamone clearly indicated that he refrained from distributing flyers that evening, the night before the election, because of the criminal charges against him.  (Salamone Dep. at 42 in Pl.'s Ex. N.)

**IV.  DISCUSSION**

    **A.    Whether Statements Allegedly Made by Eggers are Admissible**

Prior to considering the moving defendants' arguments in support of their motion for summary judgment, the Court must resolve a dispute over what evidence is admissible at this stage. The moving defendants have attempted to use an out of court statement, allegedly made by absent defendant Eggers, to support their argument that she filed a criminal complaint against Plaintiffs solely because she felt Plaintiffs were harassing her and not because the moving defendants coerced her into filing it. If the Court determines that the statement is inadmissible hearsay, it will not consider the statement in support of this motion.  See Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 n. 13 (3d Cir. 1999) (noting that District Courts should not rely on evidence inadmissible at trial to aid summary judgment decisions).

Defendant Beppel testified at his deposition about a

--------

[1]  Elsewhere Boyce indicated that her age impaired her memory (Boyce Dep. at 68) and that she was intoxicated during her deposition (id. at 29:12-13).

conversation he allegedly had with Eggers before she filed her complaint.  The moving defendants rely on Beppel's characterizations of Eggers's out-of-court statements to support their motion for summary judgment.  (Def. St. of Undisp. Mat. Facts at ¶¶ 14-15.)  According to Beppel, Eggers told him that she wanted to file a criminal complaint against Plaintiffs because they were harassing her.  (Id.)  Defendants offer the statement to prove that Eggers wanted to file the complaint because Plaintiffs were harassing her and not because she was coerced by the moving defendants; that is to say, the out-of-court statement is offered for the truth of the matter asserted and is, therefore, generally inadmissible as hearsay.  See Fed. R. Evid. 801(c).

    The moving defendants argue that the statement is nevertheless admissible under the hearsay exceptions for admissions by a party opponent, Fed. R. Evid. 801(d)(2), and statements of declarant's then-existing state of mind, Fed. R. Evid. 803(3).  (Def. Reply at 2.)  The moving defendants are mistaken.  While Rule 801(d)(2) would permit, as non-hearsay, any statement by Eggers to be admissible against Eggers, this motion for summary judgment is not asserted against Eggers.  Therefore the 801(d)(2) exception does not apply to her out-of-court statement.

    Similarly, the record indicates that Eggers's statement was

9

not a statement of her then-existing state of mind that would be permitted under the 803(3) exception to the hearsay rule.  That rule provides that a statement is not excluded by the hearsay rule if it is a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed . . . ."  Beppel testified that Eggers came to the police station to file a harassment complaint three days after her last encounter with Plaintiffs. (Beppel Dep. at 45.)  Further, Beppel testified that Eggers was motivated by a continuing course of conduct that had been "ongoing for some time."  (Id. at 37.)  Therefore, any indication that she felt harassed is better characterized as a memory of how she had felt in the past, rather than of her then-existing state of mind as she sat in the police station that Monday morning. The moving defendants have not convinced the Court that the content of Eggers's conversation with Beppel would be admissible at trial.  Therefore, the Court will not consider those statements in connection with the motion.

**B.   Whether the Mount Ephraim Defendants Can be Liable for Eggers's Complaint**

Plaintiffs argue that the institution of criminal charges against them violated their First Amendment Rights and that because Eggers was the Borough's Clerk, her institution of

10

charges against them constituted state action for which the moving defendants can be held liable.  This argument conflates four separate issues: first, whether Eggers was acting under color of law when she filed a complaint; second, if so, whether she was acting pursuant to a policy or custom such that the Borough can be liable for that conduct; third, whether Conte or Beppel can be liable for failing to intervene to prevent the filing and service of Eggers's complaint; and fourth, if Eggers was not acting as a public official, whether Beppel and Conte can nevertheless be liable for inducing her into filing the complaint.[2]

### 1.   Whether Eggers was Acting under Color of Law

Under 42 U.S.C. § 1983, a defendant must have caused a constitutional violation "under color of law" to be civilly liable for that violation.  Because the Constitution's state action requirement is identical to the "under color of law" requirement in 42 U.S.C. § 1983, Lugar v. Edmondson Oil Co., 457 U.S. 922, 929 (1982), the analysis of whether Eggers was acting under color of law will inform both whether she is suable under §

---

[2]  If so, then a fifth issue could arise: whether Conte's or Beppel's conduct could subject the Borough to liability under Monell.  There is no merit to Plaintiffs' argument that because there were municipal ordinances in place at the time that also chilled First Amendment conduct, any violation of the First Amendment is attributable to that established policy.  Rather, the infringing policy must have been the moving force behind the conduct on which the complaint is based.

1983 and whether any violation of the Constitution occurred.

There is not merit to Plaintiff's argument that Eggers was acting under color of law when she filed her complaint merely because she was employed by the Borough at the time.  It is clear that she was complaining to the police and filing a complaint in the same manner as would any private citizen.  There is no allegation that she was under the direction of her employer or used her position in any way to effectuate the filing.  There is no allegation, nor any evidence, that her usual job duties involved any of the tasks she performed to file the criminal complaint.  Nor is there evidence indicating that any power associated with her position enabled Eggers to file the complaint.  As such, no reasonable jury could find that she was acting under color of law.

Therefore, there is no need to examine whether Eggers was acting pursuant to a custom or policy of the Borough such that it could be liable for her conduct.  However, the Court notes that Plaintiffs have not provided any evidence of a custom or policy that could have directed her conduct.  See n. 2, supra.  Further, to hold the municipality liable for Eggers's conduct would require that the municipality engaged in particularly egregious coercion, as explained below, and none has been alleged.

As to the Mount Ephraim Defendants' potential liability for Eggers's conduct, the Supreme Court has indicated that liability

can attach to private conduct when a private individual is a
willful participant in unconstitutional state activity.  <u>Lugar</u>,
457 U.S. at 941.  However, in that situation, it is the private
individual who may be liable for her participation in unlawful
state conduct and not a governmental actor who can be liable for
the conduct of the private party.  <u>Id.</u>  In other words, a private
person colluding with state actors to deprive individuals of
constitutional rights may be deemed to be acting under color of
law and thus may be liable.  But that doctrine provides no
recourse as to claims against other governmental actors who did
not themselves deprive individuals of constitutional rights.  <u>Cf.</u>
<u>Adickes v. Kress & Co.</u>, 398 U.S. 144 (1966) (restaurant that
refused to serve white customer who was dining with black
customers was acting under color of law as was police officer who
arrested white customer for "vagrancy").  Therefore, whether or
not Eggers was acting under color of law, Plaintiffs must provide
evidence of the Mount Ephraim Defendants' unlawful conduct to
hold them liable.  No such evidence has been provided.  The plain
language of 42 U.S.C. § 1983 requires that plaintiffs show the
targeted defendants actually caused the alleged constitutional
violations.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658,
692 (1978); <u>Deshaney v. Winnebago County Dep't of Soc. Servs.</u>,
489 U.S. 189, 197 (1989)("[A] State's failure to protect an
individual against private violence simply does not constitute a

13

violation of the Due Process Clause.").

2.   <u>Whether Public Defendants Could be Liable for<br>Procuring Eggers's Conduct</u>

Plaintiffs seek "to hold public officials liable for the
actions of a private defendant. Under these circumstances, state
action may be found, but only if 'there is such a close nexus
between the State and the challenged action that seemingly
private behavior may be fairly treated as that of the State
itself.'"  <u>Downey v. Coalition Against Rape & Abuse, Inc.</u>, 143 F.
Supp. 2d 423, 438 (D.N.J. 2001), <u>aff'd</u>, 142 Fed. Appx. 645 (3d
Cir. 2005) (quoting <u>Brentwood Acad. v. Tenn. Secondary Sch. Ath.
Ass'n</u>, 531 U.S. 288, 295 (2001)).

> When a public official is sued for allegedly
> causing a third party to take some type of
> adverse action against plaintiff's speech,
> [the Court of Appeals for the Third Circuit
> has] held that defendant's conduct must be of
> a particularly virulent character.  It is not
> enough that defendant speaks critically of
> plaintiff or even that defendant directly
> urges or influences the third party to take
> adverse action.  Rather, defendant must
> "threaten" or "coerce" the third party to
> act.

<u>McLaughlin v. Watson</u>, 271 F.3d 566, 573 (3d Cir. 2001), <u>cert.
denied</u>, 535 U.S. 989 (2002).

No reasonable fact-finder could determine on the record
before the Court that Defendants threatened or coerced Eggers
into filing her complaint.  There is no evidence of any threat
and there are merely bald allegations of "acquiescence" (Pl. Br.

14

at 18)[3], which do not suffice.  While Plaintiffs have argued that
the officers' testimony is self-serving, there is no record of a
deposition from Ms. Eggers, who could provide further
illumination as to her motivations.  On the contrary, Plaintiffs
have alleged that Eggers had her own interests in filing claims
against them, as the flyers targeted her father and his friends,
upon whom she depended for her position.  As Plaintiffs have the
burden to show threats or coercion at trial, their failure to
provide any evidence of such conduct is fatal.

Further, "a State normally can be held responsible for a
private decision only when it has exercised coercive power or has
provided such significant encouragement, either overt or covert,
*that the choice must in law be deemed to be that of the State*."
Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (emphasis added).
Taking the evidence in the light most favorable to Plaintiffs, it
is undisputed that the moving defendants refused to file the
complaint themselves.  This, taken together with the complete
absence of any evidence of coercion, let alone "particularly
virulent" conduct, and Plaintiffs' admissions that Eggers had a

---

[3] Similarly, that the officers failed to discourage Eggers
from filing the complaint and "did nothing to intervene and
convince her that as a public official she shouldn't be filing
such charges," (Pl. Br. at 18.) does not suffice to hold the
officers liable for Eggers's conduct.  Plaintiffs cite no case to
the contrary and attempt to rely on the bystander liability
doctrine in excessive force cases, where both the bystander and
the principal actor are government officials acting under color
of law.  (Id. at 19.)

personal interest in suppressing their expressions, require
finding that Eggers's conduct can not be deemed to be the conduct
of the government.

Because Plaintiffs cannot establish that Defendants
committed any constitutional violation when Eggers filed her
criminal complaint, Defendants are entitled to qualified immunity
for that aspect of the case.

###    C.    Whether the Mount Ephraim Defendants Can be Liable for Following Plaintiffs While they Distributed Flyers

The undisputed facts show that Defendant Conte followed
Plaintiffs around town while they were distributing flyers and
that on at least one occasion he alerted a homeowner to their
presence.  That homeowner, Ms. Eggers, subsequently filed a
criminal complaint against Plaintiffs.  Viewing the facts in the
light most favorable to Plaintiffs, the Court finds that Conte's
surveillance did not violate Plaintiffs' First Amendment Rights
of free expression because there is no evidence that the
surveillance itself chilled Plaintiffs' activities; thus, the
surveillance did not rise to the level of coercive or
intimidating conduct.

But the legal landscape shifts somewhat when a police
officer gives information to a private citizen, developed from
his surveillance, with an intent that the citizen use the
information to retaliate against the Plaintiff for exercising
First Amendment rights.  Although "the Government's surveillance

16

of individuals in public places does not, by itself, implicate
the Constitution. . . an individual has a viable claim against
the government when he is able to prove that the government took
action against him in retaliation for his exercise of First
Amendment rights." Anderson v. Davila, 125 F.3d 148, 160 (3d
Cir. 1997). Plaintiffs have presented evidence from which a
reasonable juror could find that Conte's surveillance caused
Eggers to file these criminal charges and chilled Plaintiffs'
political speech. Plaintiffs were charged with a crime as a
result of Conte's surveillance and Conte's sharing of
surveillance information with Eggers. Plaintiffs claim he acted
with intent to thwart their political speech. Viewing the facts
in the light most favorable to Plaintiffs, a reasonable juror
could find that Conte, whom Plaintiffs claim was a political ally
of the targeted administration, informed Eggers of the flyers in
the hopes that she would retaliate against Plaintiffs.
Plaintiffs pointed to evidence that Conte viewed the leaving of a
political flyer as harassment of Eggers and that he regarded the
flyer itself as evidence of a crime.[4] When he was able to
provide her with information about who had left the flyers and
she filed a criminal complaint, his surveillance was no longer

---

[4] (Conte Dep. at 52:10 - 53:5); (Conte Patrol Log at Ex. K
of Daily Aff.) (stating Salamone and Boyce "involved in
suspicious activity, later found to be harassment"); (Conte
Investigation Rpt. at Ex. A of Daily Aff.) (labeling matter as
crime of "harassment" in violation of N.J.S.A. 2C:33-4C).

17

the type of permissible conduct that might only subjectively chill speech.  Cf. Laird v. Tatum, 408 U.S. 1 (1972) (police surveillance is not actionable by Plaintiffs who merely fear enforcement or retaliation).  His conduct actually chilled speech, according to Salamone[5], and provided a civilian with the necessary evidence to use the state's criminal powers against Plaintiffs.

In Philadelphia Yearly Meeting of Religious Soc. of Friends v. Tate, 519 F.2d 1335, 1339 (3d Cir. 1975), the Third Circuit found that police disclosure of names of political dissidents gathered during surveillance of public rallies violates rights protected by the First Amendment.  Similarly, in the present case, it is conceivable that Plaintiffs' complaint states a viable cause of action for violation of First Amendment rights of political expression, if information gathered in an otherwise lawful police surveillance was shared with a private citizen with the intent that the information be used to retaliate against the Plaintiffs for their exercise of First Amendment rights.  Thus, the facts as pled could state a cognizable claim that Conte violated Plaintiffs' First Amendment rights through retaliation.[6]

_____

[5]  Plaintiff Salamone testified that he and Boyce were planning to cover the Northeast section of the Borough but that plan was abandoned after service of the criminal charges. (Salamone Dep. at 41:23 to 42:14).

[6]  In Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006), the Third Circuit held that a prima facie claim of

Under the second prong of the qualified immunity analysis, supra, however, a reasonable officer in his situation might have thought his conduct was lawful.  The Third Circuit has held that, in general, police surveillance of speech in public places is not unlawful.  Id. at 1337-38.  "[S]uch activity by law enforcement authorities, without more, is legally unobjectionable and creates at best a so-called subjective chill which the Supreme Court has said is not a substitute for a claim of specific present harm or a threat of specific future harm."  Id. (referring to Tatum, 408 U.S. 1).  In the present circumstances, Detective Conte could reasonably have believed that his conduct was proper.  He was investigating suspicious activity after dark on his patrol, when he noticed Plaintiffs' black Ford Explorer driving down a road into a park that closes at dusk.  (Conte Dep. at 21:1-8.)  He was reasonably suspicious why the vehicle would be driving into the park at 11:45 p.m.  (Id. at 27:1-3.)  Because the vehicle continued moving through the park, he did not stop it, but he ran the registration number and found it was registered to Ms. Boyce. A few minutes later when he saw the vehicle again, he saw the male driver, Mr. Salamone, cover his face with his hand, according to the investigative report.  (Ex. A at 2) and Conte's

---

retaliation is established when: (1) the activity in question is protected by the First Amendment; (2) the defendant responded with retaliation; and (3) the protected activity was a substantial factor in the alleged retaliation.

deposition testimony (Conte Dep. at 46:13-20).  Close to midnight he observed Ms. Boyce walk up the stairs to Eggers's porch while Mr. Salamone drove away and apparently waited elsewhere, as Conte saw Ms. Boyce lift up the Eggers mailbox on the porch to place an object under it.  (Ex. A. at 2.)  This activity, near midnight in a residential area, could be deemed suspicious activity by a reasonable officer, and his action in alerting the Eggers family to the presence of a rather stealthy-appearing visitor was not unreasonable.  (See Conte Dep. at 47:21 to 49:25 and 51:2-23.) There is no dispute to these facts.  Because a reasonable officer in Conte's position could reasonably take each of these steps, including notifying the homeowner of the midnight presence of a visitor to the premises, as part of a lawful investigation of suspicious activity[7], Officer Conte is entitled to qualified immunity from § 1983 liability for this conduct.

---

[7]  Informing the Court's decision on qualified immunity is the fact that the line is murky between permissible and impermissible police activities when public political speech is involved.  While the surveillance of activity occurring in public was lawful, Officer Conte may have made a misstep when he informed the homeowner of the speakers' identities, as this information was subject to misuse.  Compare Laird v. Tatum, 408 U.S. 1 (1972) with Philadelphia Yearly Meeting of Religious Soc. of Friends v. Tate, 519 F.2d 1335, 1339 (3d Cir. 1975). Nevertheless, a reasonable officer might have also thought that such suspicious activity near one's home should be reported to the homeowner and that such conduct by him was lawful.

**D.   Whether Mount Ephraim Can Be Liable Based on Municipal Code**

Plaintiffs argue that the existence of municipal ordinances that also infringe First Amendment rights can subject the Borough of Mount Ephraim to liability in this case because "what occurred was consistent with" that code.  The offending ordinances banned election signs and the distribution of "seditious or unpatriotic written materials."  (Pl. Br. at 21-22.)  Plaintiffs concede, however, that they were not charged with violating these ordinances, nor did any Defendant threaten them with such charges.  Defendants correctly point out, therefore, that neither ordinance actually caused the alleged violations.  Thus, even assuming, for purposes of this claim, that one of the defendants had infringed Plaintiffs' First Amendment rights, the Borough of Mount Ephraim could not itself be liable under a custom or policy theory, pursuant to <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 698 (1978).  "[A] municipality may be held liable only if its policy or custom is the 'moving force' behind a constitutional violation."  <u>Sanford v. Stiles</u>, 456 F.3d 298, 314 (3d Cir. 2006). Plaintiffs have failed to state a claim for municipal liability because they have failed to identify any municipal policy or custom that actually caused the conduct at issue in this case. Therefore, in addition to the qualified immunity granted above, the Borough is entitled to summary judgment on all claims against it.

21

**V.    CONCLUSION**

For the reasons explained above, the Court shall grant the motion for summary judgment as to all claims asserted against Defendants Brian Conte, Brian Beppel and the Borough of Mount Ephraim.  An appropriate Order shall be entered.


**June 25, 2007**                        **s/ Jerome B. Simandle**
Date                                     Jerome B. Simandle
                                         U.S. District Judge